UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD J. PIERCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-01739-TWP-KMB |
| ) | |
| ALEX ALICEA, ) | |
| JASON GRIFFITH, ) | |
| DENNIS REAGLE, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Alex Alicea ("Officer Alicea"), Jason Griffith ("Lieutenant Griffith"), and Dennis Reagle ("Warden Reagle") (collectively the "Defendants") (Dkt. 64). Plaintiff Ronald Pierce ("Mr. Pierce"), an inmate incarcerated at Pendleton Correctional Facility ("Pendleton") sued the Defendants, officials at Pendleton, alleging that Officer Alicea unnecessarily sprayed him with Oleoresin Capsicum ("OC") spray, causing him vision and hearing impairments, and that Lieutenant Griffith was present during the incident and allowed it to happen. Thereafter, the Defendants retaliated against him by covering up the incident. For the reasons explained below, summary judgment is **granted in part and denied in part**.

### I. STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable

1

to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only must consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.   FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Pierce and draws all reasonable inferences in Mr. Pierce's favor. *Khungar*, 985 F.3d at 572–73.

### A.   The Parties

During the relevant time, Mr. Pierce was in the custody of the Indiana Department of Correction and housed at Pendleton. (Dkt. 65-1 ¶ 5). Warden Reagle was the Warden, Officer Alicea was a Correctional Officer, and Lieutenant Griffith was a Lieutenant at Pendleton (Dkt. 65-3 at 1;  Dkt. 65-1 ¶ 2; Dkt. 65-3 ¶ 2).

B.   **The OC Incident**

On October 12, 2021, at approximately 8:49 p.m., E-Squad was conducting a high security targeted shakedown in H cell house, where Mr. Pierce was housed (Dkt. 65-6). When Officer Alicea approached Mr. Pierce's cell with other prison staff, Mr. Pierce was destroying an unknown object in his cell (Dkt. 65-1 ¶ 7-8). The parties dispute what happened next, but as required, the Court recites the evidence in the light most favorable to Mr. Pierce.

Mr. Pierce was tearing up a paper that contained his relative's address when Officer Alicea yelled "stop," and simultaneously sprayed Mr. Pierce directly in his right eye with OC spray (Dkt. 27 ¶ 12). Officer Alicea believed Mr. Pierce was destroying contraband and attests that before he sprayed the OC, he ordered Mr. Pierce to cuff up (Dkt. 65-1 ¶ 7). Officer Alicea alleges that he then administered an approximate one-second burst of OC spray on Mr. Pierce (Dkt. 68-1 at 3 ).

Mr. Pierce denies that Officer Alicea issued an order for him to cuff up, but he does not dispute that he was tearing up papers at the time (Dkt. 27 ¶ 12). The initial burst of spray went directly into Mr. Pierce's eyes, ear, nose, mouth and forehead (Dkt. 79 at 3). Officer Alicea attests that he then gave Mr. Pierce another order to cuff up (Dkt. 68-1 at 3 ¶). Mr. Pierce disputes that Officer Alicea gave any warning and states that "[Officer] Alicea deliberately lied." (Dkt. 81 at 2). Rather, Mr. Pierce was at the sink in his cell washing his hands. (Dkt. 79 at 11). Without warning, Officer Alicea then administered a second OC burst on Mr. Pierce (Dkt. 65-1 ¶ 12). And "[e]ven if [Officer] Alicea did issue to [Mr.] Pierce a second order," Mr. Pierce states that he could not comply with the second order because the effects of the first OC Spray had affected his balance and mental functioning (Dkt. 79 at 8).

There is a dispute of fact as to where the OC spray hit Mr. Pierce. Mr. Pierce affirms that that the second OC burst also "[caught] him in his right eye." (Dkt. 27 at ¶ 17). Officer Alicea

3

contends the second OC burst was "off target." (Dkt. 65-1 ¶ 12).

Lieutenant Griffith "was present when Mr. Pierce was assaulted with the OC spray and did nothing to stop the attack until after Mr. Pierce had been assaulted twice." (Dkt. 27 ¶ 27). Warden Reagle was not present when the use of force occurred (Dkt. 65-3).

On October 12, 2021, Officer Alicea wrote a conduct report accusing Mr. Pierce of disorderly conduct (Dkt. 65-4 at 13). The "Report of Disciplinary Hearing" states that Mr. Pierce pled guilty and commented, "I won't refuse orders no more." *Id*. at 1. Mr. Pierce was given a written reprimand: "Do not violate 347." *Id*. On October 13, 2021, Officer Niederhelman wrote a conduct report for Mr. Pierce for unauthorized possession of property, a state lock, found when conducting the shakedown of Mr. Pierce's cell (Dkt. 65-5 at 4).

### III.  DISCUSSION

Mr. Pierce argues that Officer Alicea used excessive force against him by issuing the two bursts of OC spray, that Lieutenant Griffith failed to protect him from this use of force, and that all Defendants retaliated against him after this incident by altering the video footage and falsifying reports.[1] The Court will address each argument in turn.

### A.  Excessive Force

Officer Alicea argues that he did not use excessive force against Mr. Pierce and that he is entitled to qualified immunity on this claim.

#### 1.  Standards

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does

---

[1] In his response to the Motion for Summary Judgment, Mr. Pierce contends that Officer Alicea denied him a decontamination shower. Mr. Pierce did allege in his Complaint that he was denied a shower, but did not allege who denied it. Thus, no such claim was identified in the Court's screening order. Further, in that order, the Court directed Mr. Pierce that if he believed he had raised a claim that the Court had not identified, to notify the Court and he did not do so. Therefore, no claims based on the denial of a decontamination shower are proceeding.

4

not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013).

This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)). To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up).

Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted)).

5

Qualified immunity thus "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Mr. Pierce's claim here stems from the Eighth Amendment's prohibition on cruel and unusual punishment, which includes excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663. Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). Malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *McCottrell*, 933 F.3d at 662.

### 2. First Use of OC Spray

The parties dispute the facts surrounding the first use of OC Spray. Mr. Pierce attests that he was not resisting or posing any type of threat to Officer Alicea or the other e-squad officers when the officers arrived in front of his cell (Dkt. 79 at 4). On the other hand, Officer Alicea attests that he initially ordered Mr. Pierce to cuff up and Mr. Pierce refused. (Dkt. 65-1 ¶ 7–10) Mr. Pierce denies hearing any such order (Dkt. 79 at 5). At this stage of the proceeidngs, the Court draws all inferences in Mr. Pierce's favor and accepts that he never heard such a warning. Officer Alicea argues that his use of OC Spray was nonetheless justified because Mr. Pierce was tearing up and

6

flushing potential contraband at the time.

It is not cruel and unusual punishment to use "mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). And a prison officer may use small amounts of pepper spray to compel a disobedient prisoner to leave a cell. *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (where prisoner had hit his cellmate and refused to comply with order to leave cell, use of pepper spray was justifiable). But "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto*, 744 F.2d at 1270. Further, the Seventh Circuit has held that officers should generally provide adequate warnings to an inmate before administering OC spray. *Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009) (force "including mace and tear gas . . . should generally follow adequate warnings"). Because it is clearly established that the use of OC spray should follow adequate warnings, a reasonable jury believing Mr. Pierce's version of the events—that Officer Alicea used OC spray on him without warning—could conclude that Officer Alicea violated his clearly established Eighth Amendment rights. Officer Alicea therefore is not entitled to summary judgment on the qualified immunity defense.

3. **Second Use of OC Spray**

Next, Officer Alicea argues that Mr. Pierce's argument in his response that "even if [Officer] Alicea did issue to [Mr.] Pierce a second order to cuff up," indicates a concession that either Mr. Pierce does not know or does not dispute that Officer Alicea ordered him to cuff up (Dkt. 99 at 5). But Mr. Pierce denies in all his responses that a second order to cuff up was made (Dkt. 79 at 5, Dkt. 81 at 2). Additionally, even if Mr. Pierce can be understood to concede this

7

point, there is at least a dispute of fact regarding whether that second burst was done in good faith, rather than maliciously. *See McCottrell*, 933 F.3d at 664. At the time of the second burst, there is no evidence that Mr. Pierce was posing a threat to others or was continuing to attempt to destroy potential contraband. Mr. Pierce explains that the first OC burst had disoriented him, he was trying to wash the spray off his hands and face, and that Officer Alicea deployed the second burst very shortly after the first, without giving him time to comply.[2] As with the first OC burst, the jury could conclude that Officer Alicea again violated Mr. Pierce's clearly established Eighth Amendment rights. *See Lewis*, 581 F.3d at 479 (explaining that the use of a taser or pepper spray should not be "exaggerated or excessive" and should follow adequate warnings). Officer Alicea is not entitled to summary judgment on the qualified immunity defense on this claim.

**B.     Failure to Protect**

Mr. Pierce asserts that Lieutenant Griffith failed to protect him from being OC sprayed by Officer Alicea. Prison officials have a duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). To succeed on a claim for failure to protect, Mr. Pierce must show that (1) Lieutenant Griffith was aware of a substantial risk of serious injury to him, and (2) he acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). An official will only be liable when he disregards that risk by failing

---

[2] The Defendants contend that Mr. Pierce still did not comply for several minutes after the second burst, but at most, this creates a disputed issue of fact regarding whether he could or would have complied if he had been given adequate warnings.

8

to take reasonable measures to abate it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

Mr. Pierce alleges that Lieutenant Griffith "was present when Mr. Pierce was assaulted with the OC spray and did nothing to stop the attack until after Mr. Pierce had been assaulted twice." (Dkt. 27 ¶ 27). It is unclear from the record whether Mr. Pierce contends that Lieutenant Griffith was present for the first burst of OC spray. Lieutenant Griffith attests that he was called to Mr. Pierce's cell to assist but when he arrived, Mr. Pierce would not submit to restraints and that Officer Alicea deployed OC spray a second time because Mr. Pierce would not comply and cuff up (Dkt. 65-2 at ¶¶ 6, 7, 8). Mr. Pierce argues nonetheless that Lieutenant Griffith should have ordered Officer Alicea not to spray Mr. Pierce a second time (Dkt. 80 at 10). Lieutenant Griffith argues that accepting Mr. Pierce's version, even if he was present when Officer Alicea deployed the OC spray, each burst happened so quickly that no reasonable jury could conclude that Lieutenant Griffith had time or opportunity to intervene (Dkt. 99 at 6-7).

"A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014) (cleaned up). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury *could not possibly conclude otherwise*." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (cleaned up) (emphasis in original). Here, Mr. Pierce's own version of events is that Officer Alicea deployed the first burst of OC spray without warning and the second without providing him time to comply. No reasonable jury could find in these circumstances that Lieutenant Griffith had a realistic opportunity to stop Officer Alicea. *See Hughes v. Durrent,* No. 15 C 6432, 2017 WL 3978702, at *8 (N.D. Ill. Sept. 11, 2017) (evidence that officer was an "unsuspecting bystander" of other officer's use of OC spray entitled him to summary judgment on failure to protect claim).

Accordingly, Lieutenant Griffith is entitled to summary judgment on the failure to protect claim.

**C.     Retaliation**

Finally, Mr. Pierce alleges that, after he filed a grievance about this incident, each of the Defendants retaliated against him by covering up the incident through the alteration of camera footage and falsification of reports. To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022).

In his Amended Complaint, Mr. Pierce alleged that "[t]he defendant then went on to doctor evidence and taunt and intimidate Mr. Pierce for filing this case." (Dkt. 27 ¶ 37). He also alleges that Warden Reagle and Lieutenant Griffith attempted to cover up facts about the incident through the grievance process and they took part in a cover up by doctoring camera footage and lying in reports (Dkt. 27 ¶ 40, 42).

In support of the Motion for Summary Judgment, the Defendants argue that there is no evidence that the conduct report or other reports were intentionally falsified or that any video was deleted. In response to the motion, Mr. Pierce provides only a conclusory argument that Warden Reagle personally altered camera footage. To the extent Mr. Pierce contends that the Defendants falsified a report, he has designated no specific evidence that would allow a reasonable jury to conclude that any of the Defendants falsified any report. Without such evidence, he cannot overcome the Motion for Summary Judgment. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non-movant receives the "benefit of reasonable inferences from the evidence, but not

speculative inferences in his favor.") (cleaned up); *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough.") (cleaned up).

As to the claim against Warden Reagle, there is no evidence that he had any involvement in the events surrounding Mr. Pierce's allegations other than signing the use of force reports in his supervisory role. In response to the Motion for Summary Judgment, Mr. Pierce states without support that Warden Reagle personally altered camera footage of the incident (Dkt. 80 at 3.) But Mr. Pierce has demonstrated no personal knowledge of this fact and has otherwise designated no evidence that Warden Reagle was personally involved in any alleged alteration of video. *See Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) ("'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'") (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)); *see also* Fed. R. Evid. 602 (a witness may only testify to matters within his personal knowledge).

Because Mr. Pierce has not designated evidence that any of the Defendants personally falsified reports or altered video footage, the Defendants are entitled to summary judgment on his retaliation claim.

### IV.  CONCLUSION

The Defendants' Motion For Summary Judgment, Dkt. [64], is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is **granted** as to Mr. Pierce's failure to protect claim against Lieutenant Griffith and his retaliation claims against all Defendants. Mr. Pierce's excessive force claim against Officer Alicea remains.

The **clerk shall terminate** Lieutenant Griffith and Warden Reagle as Defendants.

The Court prefers that Mr. Pierce be represented by counsel for the remainder of this action.

The **clerk is directed** to send Mr. Pierce a motion for assistance recruiting counsel with his copy of this Order. Mr. Pierce has **through October 9, 2025**, to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed *pro se*. Once the motion has been ruled on and if counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

Because of the age of this case, the Court will schedule a final pretrial conference and trial date by separate order.

**IT IS SO ORDERED.**

Date: 9/9/2025

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

RONALD J. PIERCE
903145
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

All Electronically Registered Counsel